# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

CHRISTIAN R. SHOWALTER,
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:18-cv-103

Dlott, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

    Plaintiff Christian R. Showalter brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying his application for disability insurance benefits ("DIB"). This matter is before the Court on plaintiff's statement of errors (Doc. 11), the Commissioner's response in opposition (Doc. 16), and plaintiff's reply (Doc. 17).

## I. Procedural Background

    Plaintiff protectively filed his application for DIB on April 24, 2014, alleging disability since June 1, 2012 due to bipolar disorder, anger/temper problems, social anxiety disorder, bulging discs, Post Traumatic Stress Disorder ("PTSD"), Oppositional Defiant Disorder ("ODD"), Attention Deficit Disorder ("ADD"), and Attention Deficit Hyperactivity Disorder ("ADHD"). The application was denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge ("ALJ") Frederick Andreas.[3] Plaintiff and a vocational expert ("VE") appeared and testified at the ALJ hearing on August 30, 2016. On February 23, 2017, the ALJ issued a decision denying

---

[1] The transcript of the ALJ hearing has been filed as a supplemental certified record. (Doc. 9).

plaintiff's DIB application. This decision became the final decision of the Commissioner when the Appeals Council denied review on December 15, 2017.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four

steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

## B.    The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2017.
>
> 2. The [plaintiff] has not engaged in substantial gainful activity since June 1, 2012, the alleged onset date (20 CFR 404.1571, *et seq.*).
>
> 3. The [plaintiff] has the following severe impairments: degenerative disc disease, essential hypertension, bipolar disorder, personality disorder, and marijuana use disorder (20 CFR 404.1520(c)).
>
> 4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] had the residual functional capacity [("RFC")] to perform light work as defined in 20 CFR 404.1567(b) with the following additional limitations: frequent climbing of ladders, ropes, or scaffolds, frequent stooping and crouching, is capable of understanding and remembering simple work instructions and sustaining concentration and persisting for simple, unskilled work tasks, he can interact occasionally in situations that do not require persuasion or frequent contact with the general public, he can interact on a superficial basis with coworkers and supervisors, superficial means the job cannot require arbitration, negotiation, or conflict resolution; management or supervision of others; or responsibility for the health[,] safety, or welfare of others, and he is able to carry out tasks where duties are relatively static and changes can be explained.

6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565).[2]

7. The [plaintiff] was born [in] . . . 1981 and was 30 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The [plaintiff] has a limited education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569 and 404.1569(a)).[3]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from June 1, 2012, through the date of [the ALJ's] decision (20 CFR 404.1520(g)).

(Tr. 720-30).

## C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley*

---

[2] Plaintiff's past relevant work was as a security guard, a light, semi-skilled job; a commercial groundskeeper, a medium, semi-skilled position which plaintiff performed at the light to medium level of exertion; and an insulation installer, a heavy, semi-skilled position.   (Tr. 728-29).

[3] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative light, unskilled jobs such as an inspector/hand packager, with 75,000 jobs in the national economy; a delivery marker, with 300,000 jobs in the national economy; and a bench assembler, with 150,000 jobs in the national economy.   (Tr. 730).

*v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D.    Specific Errors**

On appeal, plaintiff argues that the ALJ erred by: 1) failing to acknowledge the opinions on plaintiff's mental health provided by treating physician Dr. Kevin Fiehrer, M.D.; and 2) failing to clearly analyze the opinion evidence of record and explain what the ALJ meant by affording the opinions "some weight" or "little weight." (Docs. 11, 17).

5

### 1. Treating physician's mental health opinions

*i.    The ALJ's obligations to review and evaluate the evidence*

The ALJ is under a general obligation to explain the reasoning underlying his decision. *Keeton v. Comm'r,* 583 F. App'x 515, 528 (6th Cir. 2014) (citing *S.E.C. v. Chenery Corp.,* 332 U.S. 194, 196-97 (1947) (the basis for an agency decision "must be set forth with such clarity as to be understandable" in order to enable judicial review); *Hyatt Corp. v. NLRB,* 939 F.2d 361, 367 (6th Cir. 1991) (the requirement that an agency state its reasons for a decision "imposes a discipline on the agency which prevents haphazard or arbitrary administrative action")).   More specifically, the ALJ is obligated to consider all medical opinions provided in the record. *Id.* (citing 20 C.F.R. § 404.1527(c)) ("Regardless of its source, we will evaluate every medical opinion we receive.").   *See also Karger v. Comm'r,* 414 F. App'x 739, 754 (6th Cir. 2011). When the medical opinion is provided by a treating physician, the ALJ is obligated to both consider the source's medical opinions and to evaluate them in accordance with the treating physician rule. *See* 20 C.F.R. § 404.1527(c); *Karger,* 414 F. App'x at 751-53.

Under the treating physician rule, "greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians. . . ." *Rogers,* 486 F.3d at 242. The rationale for the rule is that treating physicians are "the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone." *Id.*  A treating source's medical opinion must be given "controlling weight" if it is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) "not inconsistent with the other substantial evidence in [the] case record[.]"

20 C.F.R. § 404.1527(c)(2)[5]; *see also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). If a treating source's medical opinion is not entitled to controlling weight, the ALJ must apply the regulatory factors set out in § 404.1527(c)(2) in determining what weight to give the opinion. *Gayheart*, 710 F.3d at 376; *Blakley*, 581 F.3d at 408 ("Treating source medical opinions [that are not accorded controlling weight] are still entitled to deference and must be weighed using all of the factors provided in" 20 C.F.R. § 404.1527(c)) (quoting SSR 96-2p, 1996 WL 374188, at *4)[6]. In addition, the ALJ must "give good reasons in [the] notice of determination or decision for the weight [given to the claimant's] treating source's medical opinion." 20 C.F.R. § 404.1527(c)(2). The ALJ's reasons must be supported by the evidence in the case record and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. *Gayheart*, 710 F.3d at 376 (citing SSR 96-2p, 1996 WL 374188, at *5). This requirement serves a two-fold purpose: (1) it helps a claimant to understand the disposition of his case, especially "where a claimant knows that his physician has deemed him disabled," and (2) it "permits meaningful review of the ALJ's application of the [treating-source] rule." *Wilson*, 378 F.3d at 544.

---

[5] The regulation was in effect until March 27, 2017 and therefore applies to plaintiff's claim filed in 2014. For claims filed on or after March 27, 2017, all medical sources, not just acceptable medical sources, can make evidence that the Social Security Administration categorizes and considers as medical opinions. 82 FR 15263-01, 2017 WL 1105348 (March 27, 2017).

[6] SSR 96-2p was rescinded effective March 27, 2017, when the Social Security Administration published final rules that revised the rules and regulations applicable to the evaluation of medical evidence for claims filed on or after that date. Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01, 2017 WL 168819, at *5844-45, 5869, 5880. Since plaintiff's claim was filed in 2014, SSR 96-2p applies to this case. *See Shields v. Comm'r of Soc. Sec.*, 732 F. App'x 430, 437 n.9 (6th Cir. 2018).

Opinions from non-treating and non-examining sources are never assessed for "controlling weight." A non-treating source's opinion is weighed based on the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion, "but only if a treating source opinion is not deemed controlling." *Gayheart*, 710 F.3d at 376 (citing 20 C.F.R. § 404.1527(c)(3)-(6))). Because a non-examining source has no examining or treating relationship with the claimant, the weight to be afforded the opinion of a non-examining source depends on the degree to which the source provides supporting explanations for his opinions and the degree to which his opinion considers all of the pertinent evidence in the record, including the opinions of treating and other examining sources. 20 C.F.R. § 404.1527(c)(3).

Under the regulations and rulings applicable to plaintiff's claim, only "acceptable medical sources" as defined under former 20 C.F.R. § 404.1513(a)[7] can provide evidence which establishes the existence of a medically determinable impairment, give medical opinions, and be considered treating sources whose medical opinions may be entitled to "controlling weight." *See* SSR 06-03p, 2006 WL 2329939, *2.[8] A licensed clinical social worker is not an "acceptable medical source" as defined under the applicable Social Security rules and regulations but instead falls under the category of "other source." *Id.*; *compare* former 20 C.F.R. §

---

[7] Former § 404.1513 was in effect until March 27, 2017, and therefore applies to plaintiff's claim filed in 2014. For claims filed on or after March 27, 2017, all medical sources, not just acceptable medical sources, can make evidence that the Social Security Administration categorizes and considers as medical opinions. 82 FR 15263-01, 2017 WL 1105348 (March 27, 2017).

[8] SSR 06-3p has been rescinded in keeping with amendments to the regulations that apply to claims filed on or after March 27, 2017, and the rescission is effective for claims filed on or after that date. 82 FR 15263-01, 2017 WL 1105348 (March 27, 2017). Because plaintiff's claim was filed before the effective date of the rescission, SSR 06-3p applies here.

404.1513(a) (listing "acceptable medical sources") *with* former 20 C.F.R. § 404.1513(d)(1) (medical sources not listed in § 1513(a), such as therapists, are considered to be "other sources" rather than "acceptable medical sources"). Although information from "other sources" cannot establish the existence of a medically determinable impairment, the information "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-03p, 2006 WL 2329939, at *2; former 20 C.F.R. § 404.1513(d).

    *ii.*    *Harmless error rule*

    "A failure to follow the procedural requirement 'of identifying the reasons for discounting the [treating physician's] opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'" *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) (quoting *Rogers*, 486 F.3d at 243). *See also Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009) (quoting *Wilson*, 378 F.3d at 545) (remand is appropriate "when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion" and the ALJ's opinion does not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.). However, remand is not necessary if the ALJ's failure to provide good reasons is a "harmless *de minimis* procedural violation." *Blakley*, 581 F.3d at 409. The Sixth Circuit has identified three situations in which harmless error might occur: (1) where the "treating source's opinion is so patently deficient that the Commissioner could not possibly credit it"; (2) where "the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion"; and (3) "where the Commissioner has met the goal of . . . the procedural safeguard of reasons." *Shields v. Comm'r of Soc. Sec.*, 732 F. App'x 430, 438 (6th Cir. 2018) (quoting *Wilson*, 378 F.3d at 547). The goal

of the procedural safeguard may be met when the "'supportability' of a doctor's opinion, or its consistency with other evidence in the record, is *indirectly* attacked via an ALJ's analysis of a physician's other opinions or his analysis of the claimant's ailments." *Id.* (quoting *Friend*, 375 F. App'x at 551) (emphasis in the original).

A procedural error is not harmless "simply because [the claimant] appears to have . . . little chance of success on the merits[.]" *Id.* (citing *Wilson*, 378 F.3d at 546) (quotation omitted)). Further, where the ALJ's error "makes meaningful review impossible, the violation of the good-reasons rule can never qualify as harmless error." *Id.* (quoting *Blakley*, 581 F.3d at 409).

### iii. *Opinion evidence*

Plaintiff's primary care physician, Dr. Fiehrer, provided three opinions on plaintiff's functioning. First, Dr. Fiehrer wrote in a letter dated August 27, 2015, that plaintiff had been diagnosed with bipolar disorder, chronic low back pain, PTSD, and ADD; he had been treated with pain medication, muscle relaxers and physical therapy without improvement; and he had been unable to work for the past five years due to his medical problems. (Tr. 454).

Second, Dr. Fiehrer completed a "Medical Source Statement" on May 31, 2016, that assessed plaintiff's physical functioning. (Tr. 479-81). He based his assessment on plaintiff's diagnoses of lumbar strain, degenerative joint disease of the lumbar spine, cervical strain, tendinopathy of the right rotator cuff, and mild spinal stenosis of the cervical spine. (Tr. 481). Dr. Fiehrer assessed plaintiff as able to lift up to 5 pounds occasionally, rarely able to reach with either his right or left hand/arm, and rarely able to handle or finger with either hand. (Tr. 479-80). He opined that in an 8-hour work day, plaintiff could stand 0 hours, walk 0 hours, and sit for a total of 4 hours and for 30 minutes at one time. (Tr. 480). Dr. Fiehrer assessed plaintiff

as unable to use his feet for repetitive movements as in operating foot controls; unable to bend, crouch/squat, crawl and climb steps/ladders; and unable to reach above shoulder level. (Tr. 480). Dr. Fiehrer opined that plaintiff's conditions and restrictions dated back to May 15, 2013. (Tr. 481). He reported that plaintiff's condition was likely to deteriorate under stress, particularly job stress, and that plaintiff was likely to have five or more partial or full days of unscheduled absences from work due to his diagnosed conditions, pain, and/or side effects of his medications. (*Id.*).

Finally, Dr. Fiehrer completed a "Medical Source Statement as to Ability to Perform Work Related Activities (Mental)" on May 31, 2016. (Tr. 482-84). Dr. Fiehrer opined that plaintiff was moderately impaired (defined on the form as "[u]nable to function in this area from 11% to 25% of the work day or work week") in the following areas: all areas of social interaction, which included his ability to accept instructions from or respond appropriately to criticism from supervisors or superiors; his ability to work in coordination with or in proximity to others without distracting them or exhibiting behavioral extremes; his ability to respond appropriately to co-workers or peers; and his ability to relate to the general public and maintain socially appropriate behavior. (Tr. 482). In the areas of sustained concentration and persistence, Dr. Fiehrer found that plaintiff was mildly impaired ("[u]nable to function in this area less than 10% of the work day or work week") to markedly impaired ("[u]nable to function in this area from 26% to 50% of the work day or work week"). (Tr. 482-83). Specifically, he assessed moderate impairment of the ability to perform and complete work tasks at a consistent pace in a normal work day or work week, to work in cooperation with or in proximity to others without being distracted by them, and to maintain attention and concentration for more than brief periods of time; mild impairment of his ability to process subjective information accurately and

11

to use appropriate judgment and of plaintiff's ability to carry through instructions and complete tasks independently; and marked impairment of his ability to perform at production levels expected by most employers. (Tr. 483). In the category of adaptation, Dr. Fiehrer assessed moderate impairment of plaintiff's ability to respond appropriately to changes in the work setting, to behave predictably, reliable and in an emotionally stable manner, to maintain appearance and hygiene, and to tolerate customary work pressures. (Tr. 483-84). Dr. Fiehrer assessed mild limitations of the ability to remember locations, workday procedures and instructions and of the ability to be aware of normal hazards and take necessary precautions. (Tr. 483). Dr. Fiehrer assessed plaintiff as likely to have 5 or more partial or full-day unscheduled absences each month due to his diagnosed mental impairments and/or medication side effects, and he opined that plaintiff's condition is likely to deteriorate under stress, particularly the stress of a full-time job because he is "easily agitated." (Tr. 484). He dated plaintiff's conditions and restrictions back to May 2013. (*Id.*).

Plaintiff attended counseling sessions with Ms. Susan Kleine, LPCC, from June 2012 to April 2014. (Tr. 280-353). Ms. Kleine completed a questionnaire on behalf of the state agency in which she indicated that she had last seen plaintiff on April 23, 2014. (Tr. 280-81). She listed plaintiff's diagnoses as rule-out antisocial personality disorder, Bipolar Disorder, and PTSD. She described his symptoms as alternating hypomanic episodes and major depressive symptoms, including anger and irritability, loss of appetite, insomnia, impulsive temper, "[g]randiosity toward violence and his abilities," pressured speech and distractibility, psychomotor agitation at work and with others, "activities for high potential of painful consequences," depressed mood with no interest in activities, loss of energy, fatigue, indecisiveness and inability to concentrate. (Tr. 280). Ms. Kleine noted that "[plaintiff] had

high incidence of volatile relationships on job (which soon ended) and in personal life (family [and] friends)." (Tr. 281). She also reported that plaintiff "has difficulty concentrating and focusing," he had been diagnosed with ADHD by a doctor in Kentucky, and he "gets angry when told what to do." (*Id.*).

Plaintiff underwent an initial assessment at the Talbert House in November 2013 and received mental health treatment there until at least July 2016. (Tr. 241-52, 354-72, 397-452, 494-588). At his initial assessment he was diagnosed with bipolar disorder and cannabis dependence. (Tr. 250). Laura Beyersdorfer, LISW, a counselor at the Talbert House, completed a "Medical Source Statement" on May 18, 2016. (Tr. 488). She opined that plaintiff was markedly limited in his abilities to process subjective information accurately and use appropriate judgment, carry through instructions and complete tasks independently, maintain attention and concentration for more than brief periods of time, perform at expected production levels, remember locations, workday procedures and instructions, be aware of normal hazards and take necessary precautions, and maintain personal appearance and hygiene. (Tr. 489). Ms. Beyersdorfer found plaintiff was extremely limited in his abilities to accept instructions from or respond appropriately to criticism from supervisors or superiors, work in coordination with or in proximity to others without distracting them or exhibiting behavioral extremes, respond appropriately to coworkers or peers, relate to the general public and maintain socially appropriate behaviors, perform and complete work tasks in a normal work day or work week at a consistent pace, and work in proximity to others without being distracted by them. (Tr. 488-89). Ms. Beyersdorfer also opined that plaintiff is likely to have 5 or more partial or full-day unscheduled absences each month, and his condition is likely to deteriorate if he is placed under stress, particularly the stress of an 8-hour work day. (Tr. 489-90). She reported he lacks impulse

13

control when he interacts with other people, regardless of the amount of contact, and he had

missed work in the past due to anger and his inability to understand work procedures. (Tr. 488,

490). She concluded that his prognosis was "unremarkable and any type of employment would

lead to decompensation." (Tr. 490).

Dr. Norman L. Berg, Ph.D., evaluated plaintiff for disability purposes on September 2,

2014. (Tr. 374-82). On mental status examination, plaintiff appeared moderately depressed.

(Tr. 377). Plaintiff described cycling moods and appeared mildly to moderately anxious. (Tr.

377, 378). Dr. Berg diagnosed plaintiff with unspecified personality disorder; unspecified

bipolar and related disorder; and cannabis use disorder, moderate. (Tr. 379). Dr. Berg opined

that plaintiff was capable of understanding, remembering and carrying out verbal instructions; he

was capable of performing simple tasks and appeared able to perform 2-3 step tasks; he would

have at least some difficulty responding appropriately to supervisors and to coworkers; and he

would have at least some difficulty responding to work pressures because he was more likely to

become angry, irritable, and agitated, especially with supervisors, when under work pressure.

(Tr. 381-82).

State agency psychologist Cynthia Waggoner, Psy.D., reviewed plaintiff's file in

September 2014 and concluded that he was mildly restricted in activities of daily living;

experienced moderate difficulties in maintaining social functioning; had moderate difficulties in

maintaining concentration, persistence, or pace; and had experienced no episodes of

decompensation of extended duration. (Tr. 42). Dr. Waggoner opined that plaintiff presents

as capable of understanding and remembering simple work instructions; he is able to concentrate

and persist in performing simple, unskilled work tasks; he can interact occasionally in situations

that do not require persuasion or frequent contact with the general public; and he can carry out tasks where duties are relatively static and changes can be explained. (Tr. 44-46).

State agency psychologist, Leslie Rudy, Ph.D., reviewed plaintiff's file upon reconsideration in March 2015 and affirmed Dr. Waggoner's assessment. (Tr. 55-57).

    *iv.    The ALJ's decision*

The ALJ considered the evidence related to plaintiff's mental impairments and found that the objective findings demonstrated symptoms of moderate severity.[9] In evaluating the opinion evidence related to plaintiff's mental impairments, the ALJ gave "some weight" to Ms. Klein's opinion that plaintiff "has difficulty getting along with others and concentrating/focusing." (Tr. 726, citing Tr. 281). The ALJ found that Ms. Kleine's assessment was "somewhat consistent with the objective and subjective evidence of record" but "her conclusions are somewhat vague." (Tr. 726).

The ALJ also gave "some weight" to Dr. Berg's conclusions that plaintiff appears able to understand, remember and carry out verbal instructions; he can maintain attention and concentration to perform simple 2-3 step tasks; he would have some difficulty responding appropriately to supervisors and coworkers; and he would likely become agitated and irritable when under work pressure, especially with supervisors. (Tr. 727). The ALJ found these conclusions were generally consistent with the objective and subjective evidence of record, which documented moderate limitations in plaintiff's ability to understand, remember or apply information, interact with others, concentrate, persist or maintain pace, and adapt or manage

---

[9] The ALJ found that plaintiff had moderate limitations in understanding, remembering or applying information; moderate limitations in interacting with others; moderate limitations in concentrating, persisting or maintaining pace; and moderate limitations in adapting or managing oneself. (Tr. 721-22).

oneself, and Dr. Berg adequately supported his conclusions with objective signs and examination findings. However, the ALJ found some of his conclusions were vague, particularly with regard to plaintiff's abilities to interact with others and deal with stress.

The ALJ gave "great weight" to the opinions of the non-examining psychologists that plaintiff is able to understand and remember simple work instructions; he can sustain concentration and persist in simple, unskilled work tasks; he can interact occasionally in situations that do not require persuasion or frequent contact with the general public; he can carry out tasks where duties are relatively static and changes can be explained; and he is limited to superficial interaction with coworkers and supervisors, which the ALJ clarified to mean the job "cannot require arbitration, negotiation, or conflict resolution, management or supervision of others, or responsibility for the health[,] safety or welfare of others." (Tr. 727). The ALJ found that the reviewing psychologists provided adequate support for their conclusions and their conclusions were consistent with the weight of the objective and subjective evidence of record, which demonstrated moderate limitations in the areas of understanding, remembering or applying information; interacting with others; concentrating, persisting or maintaining pace; and adapting or managing oneself. (*Id.*).

The ALJ gave "little weight" to the opinion of Ms. Beyersdorfer that plaintiff has primarily "marked to extreme limitations in work-related mental functions"; he would miss 5 or more days of work each month; and any type of employment would lead to decompensation. (Tr. 728, citing Tr. 488-90). The ALJ found that Ms. Beyersdorfer's conclusions and the extreme limitations she assessed were not supported by her own treatment records, which generally noted angry and depressed mood/affect, rational thought process, and cooperative

behavior throughout the treatment period, and by the mental health treatment records, which documented no more than "moderate" symptoms.

      *v.     The ALJ's failure to evaluate the medical opinion evidence*

Plaintiff argues that the ALJ erred by failing to evaluate the August 2015 letter opinion and the May 2016 assessment of plaintiff's work-related mental functioning by his treating physician, Dr. Fiehrer. (*See* Tr. 454, 482-84). Plaintiff alleges this was error because it is impossible to trace the path of the ALJ's reasoning and determine whether the ALJ credited, discredited, or overlooked Dr. Fiehrer's opinions. (Doc. 11 at 8-9, citing *Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 519 (6th Cir. 2011) (quoting *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995)).

The Commissioner argues that the ALJ did not fail to address Dr. Fiehrer's August 2015 letter opinion and explicitly addressed the letter in his decision. (Tr. 727, citing Tr. 454). The Commissioner contends the opinion set forth in the letter is not entitled to any special weight because it concerned the ultimate determination of disability, an issue that is reserved to the Commissioner. (Doc. 16 at 5, citing 20 C.F.R. § 404.1527(d)(1)). The Commissioner concedes that the ALJ failed to address Dr. Fiehrer's May 2016 assessment of plaintiff's mental functioning, but the Commissioner argues the ALJ's omission was harmless error. (*Id.* at 5-8).

To the extent the ALJ failed to specifically address Dr. Fiehrer's August 2015 letter opinion that plaintiff "[h]as been unable to work for the past 5 years" due to the combination of his physical and mental impairments, any error would be harmless. Whether a person is disabled within the meaning of the Social Security Act, i.e., unable to engage in substantial gainful activity, is an issue reserved to the Commissioner and a physician's opinion that his patient is "disabled" or "unable to work" is not "giv[en] any special significance." 20 C.F.R. §

404.1527(d)(3). A treating physician's opinion on issues reserved to Commissioner is never entitled to controlling weight or special significance. *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2008); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) ("The determination of disability is ultimately the prerogative of the Commissioner, not the treating physician.") (citation and brackets omitted). Therefore, Dr. Fiehrer's opinion that plaintiff is "unable to work" is not entitled to any special weight, and any error in failing to specifically address this August 2015 opinion is harmless.

Nonetheless, the ALJ did not comply with his obligation to consider all of the medical opinions in the record, to evaluate the medical opinion evidence, and to explain the reasoning for crediting or rejecting the evidence with respect to Dr. Fiehrer's May 2016 assessment. *See Keeton*, 583 F. App'x at 528-29; 20 C.F.R. § 404.1527(c). The ALJ did not discuss or even acknowledge Dr. Fiehrer's May 2016 assessment of plaintiff's mental health functioning. Therefore, the ALJ did not comply with the treating physician rule and failed to apply the regulatory factors to Dr. Fiehrer's May 2016 opinion. *See* 20 C.F.R. § 404.1527(c); *Karger*, 414 F. App'x at 754. The ALJ erred by failing to evaluate Dr. Fiehrer's May 2016 medical opinion.

The Commissioner's argument that the ALJ's failure to evaluate the May 2016 assessment is harmless error is premised on the exception that applies when the ALJ has failed to evaluate a treating physician's opinion but makes findings consistent with the treating source's opinion. *See Shields*, 732 F. App'x at 438. The Commissioner contends that the ALJ's written decision was consistent with *most* of Dr. Fiehrer's findings. (Doc. 16 at 6). The Commissioner notes that the ALJ found that plaintiff had moderate limitations under the paragraph B criteria of the Listing (Tr. 721-22); that plaintiff's GAF scores were in the "mild to

moderate" range (Tr. 721); and that Ms. Beyersdorfer's opinion was entitled to "little weight" on the ground the "'mental health treatment records document no more than moderate symptoms' (Tr. 728, citing 488-90)." (Doc. 16 at 6). The Commissioner contends these findings by the ALJ were consistent with Dr. Fiehrer's findings on the checklist portion of his opinion, which assessed plaintiff as having "mild to moderate limitations" with one exception. (*Id*. at 7). The Commissioner argues based on these findings that the ALJ attributed limitations to plaintiff that were consistent with the mental limitations identified by Dr. Fiehrer. (*Id*. at 7-8).

The Commissioner's argument is not supported by the record. The Commissioner has divided Dr. Fiehrer's assessment into separate components - the checkbox list of limitations and the remaining findings - for no discernibly valid reason and has focused on only the checkbox list to argue that the assessment and the ALJ's findings are consistent. However, when Dr. Fiehrer's assessment is considered in its entirety, it is apparent that while there is some correlation between Dr. Fiehrer's assessment and the ALJ's findings, there are also material differences. In fact, the Commissioner acknowledges three findings that Dr. Fiehrer made which the ALJ did not adopt. (Doc. 16 at 7). First, Dr. Fiehrer assessed plaintiff with "marked" impairment of his ability to perform at production levels expected by most employers. (Tr. 483). Second, Dr. Fiehrer opined that plaintiff likely would be absent from work five or more days per month due to his mental conditions and the side effects of his medications. (Tr. 484). Third, Dr. Fiehrer found that plaintiff's condition was likely to deteriorate if he were placed under stress, and particularly under the stress of a full-time job. (*Id*.). The ALJ's decision finding only moderate impairment of plaintiff's mental functioning is not consistent with these portions of Dr. Fiehrer's assessment.

The Commissioner nonetheless argues that the ALJ's failure to adopt these findings is of

no import because the ALJ implicitly addressed Dr. Fiehrer's findings in the written disability determination. The Commissioner contends that plaintiff's mental health counselor, Ms. Beyersdorfer, completed the same form as Dr. Fiehrer; the ALJ acknowledged that Ms. Beyersdorfer found that plaintiff "primarily experienced marked to extreme limitations in work-related mental functions and would miss 5 or more days of work a month"; and the ALJ noted that Ms. Beyersdorfer concluded that "any type of employment would lead to decompensation." (Doc. 16 at 7, citing Tr. 488-90). The Commissioner argues that Dr. Fiehrer assessed these "exact same findings," and the ALJ therefore considered Dr. Fiehrer's findings when evaluating "the medical source statement" of Ms. Beyersdorfer. (Doc. 16 at 7, citing Tr. 488-90). The Commissioner contends that it is therefore of no consequence that the ALJ did not explicitly address the limitations imposed by the treating physician because the ALJ rejected these same limitations when evaluating Ms. Beyersdorfer's opinion. The Commissioner argues that the ALJ's failure to comply with the governing regulations was therefore harmless.

The Commissioner's argument is flawed. Dr. Fiehrer did not make "the exact same findings" as those the ALJ attributed to Ms. Beyersdorfer. To the contrary, the assessments of Dr. Fiehrer and Ms. Beyersdorfer differ widely with respect to the degree of impairment each found in specific areas of functioning. Ms. Beyersdorfer assessed "marked" and "extreme" limitations in the checkbox portion of her assessment. (Tr. 488-90). In contrast, Dr. Fiehrer assessed primarily "mild" and "moderate" limitations and found "marked" limitation in only one area of functioning. (Tr. 482-84). The ALJ did not implicitly consider Dr. Fiehrer's findings of mostly "mild" to "moderate" limitations by expressly evaluating Ms. Beyersdorfer's assessment of primarily "marked to extreme limitations in work-related mental functions." (Tr. 728). There is no other indication in the record that the ALJ considered Dr. Fiehrer's

assessment as opposed to ignoring it.

Nor does the record support a finding that the ALJ would have reached "the same disability determination" had he considered Dr. Fiehrer's findings, as the Commissioner suggests. (*See* Doc. 16 at 8). The ALJ rejected the "extreme limitations" that Ms. Beyersdorfer assessed in part because the ALJ found they were unsupported by her treatment records. (Tr. 728). It is not reasonable to assume that the ALJ would have rejected or discounted the opinion of plaintiff's treating physician, Dr. Fiehrer, on the same ground. Unlike Ms. Beyersdorfer, who is not considered an acceptable medical source under the applicable regulations, Dr. Fiehrer is a treating physician whose opinion is presumptively entitled to "controlling" or the "most" weight. 20 C.F.R. 404.1527(c). It is not a foregone conclusion that after applying the presumption of "controlling weight" and weighing the treating physician's opinion in accordance with the regulatory factors, the ALJ would have afforded the same weight to Dr. Fiehrer's opinion that the ALJ gave the opinion of plaintiff's mental health counselor.

The ALJ neglected to consider Dr. Fiehrer's assessment of debilitating limitations and to resolve the apparent conflicts between Dr. Fiehrer's findings and the opinions of the state agency reviewing psychologists, whose opinions the ALJ credited. In doing so, the ALJ failed to comply with the governing rules and regulations. *See* 20 C.F.R. §§ 404.1545(a)(3), 404.1527(c). The ALJ's failure to identify the reasons for discounting the treating physician's assessment of plaintiff's mental functioning and to explain "precisely how those reasons affected the weight accorded the opinion[] denotes a lack of substantial evidence," even though the ALJ's conclusion may be justified based upon the record. *Rogers*, 486 F.3d at 243; *Wilson*, 378 F.3d at 546-47. The ALJ's failure to evaluate Dr. Fiehrer's May 2016 medical opinion related to plaintiff's mental functioning was not harmless error. The ALJ's omission was particularly

harmful here because Dr. Fiehrer's mental assessment bears directly on the issue of whether there is substantial evidence in the record that shows plaintiff retained the mental RFC for substantial gainful activity. The ALJ did not address this material evidence, and it is not the Court's role on review "to scour the record for evidence and expert reasoning which the ALJ *might* have relied on and which *could* support a finding of no-disability *if* the ALJ actually considered it." *Karger*, 414 F. App'x at 754 (emphasis in the original). Remand for consideration of Dr. Fiehrer's May 2016 mental health assessment and his earlier August 2015 opinion as it relates to plaintiff's mental impairments is warranted.

Plaintiff's first assignment of error should be sustained.

## 2. The ALJ's failure to define "some" or "little" weight

Plaintiff argues that the ALJ erred by failing to explain in his written decision what he meant by the terms "some weight" and "little weight." (Doc. 11 at 9-12). The ALJ assigned "little weight" to the Ms. Beyersdorfer's assessment and to the assessments of his physical functioning by Dr. Fiehrer and chiropractor Dan Buchanan. (Tr. 726-28). The ALJ gave "some" weight to the opinions of Dr. Berg, Ms. Kleine, examining physician Dr. Martin Fritzhand, M.D., and state agency reviewing physician Dr. Gerald Klyop, M.D. (*Id.*). Plaintiff alleges that by failing to explain these findings, the ALJ did not "connect the dots" between the evidence and his conclusions. (Doc. 11 at 10, citing *Fleischer v. Astrue*, 774 F. Supp.2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)). Plaintiff further contends that the ALJ's evaluation of Dr. Berg's decision was "confusing"; the ALJ did not evaluate Ms. Kleine's opinion under the "requisite factors" in compliance with SSR 06-03p; the ALJ did not explain which of Dr. Klyop's findings were vague and did not recontact the physician for clarification; and the ALJ seemingly discredited the

findings of Ms. Beyersdorfer, Dr. Buchanan and Dr. Fiehrer (as to plaintiff's physical capacity) without properly articulating which portions of their assessments received "little" weight. (Doc. 11 at 11).

In response, the Commissioner argues that the ALJ properly articulated why the various opinions of record were entitled to "some" or "little" weight. (Doc. 16 at 8). The Commissioner contends that this Court has previously rejected an argument similar to plaintiff's concerning the vague nature of the terms "some" and "little" weight. (*Id.* at 8-9, *Farris v. Comm'r of Soc. Sec.*, No. 1:11-CV-258, 2012 WL 1552634, at *8 (S.D. Ohio Apr. 30, 2012), (Report and Recommendation), *adopted sub nom. Farris v. Comm'n of Soc. Sec.*, 2012 WL 1884232 (S.D. Ohio May 22, 2012)).

Insofar as plaintiff argues that the terms "some weight" and "little weight" are impermissibly vague, he has not established reversible error. This Court has previously rejected a "semantic" argument challenging an ALJ's use of these terms and has explained:

> The terms "significant weight," "some weight," and "little weight" are commonly used by ALJs in disability decisions when weighing medical opinions. This District has previously recognized that when an ALJ gives "significant weight" to a medical opinion, that means it is given more than "some weight" or "little weight." Likewise, assigning "some weight" to a medical opinion indicates that the ALJ is giving it more than a "little weight." *See, e.g., Moore v. Comm'r of Soc. Sec.,* No. 10-cv-916, 2012 WL 254139, at *12 (S.D. Ohio Jan. 27, 2012) (Report and Recommendation), *adopted,* 2012 WL 529778 (S.D. Ohio Feb. 17, 2012); *Lambert ex. rel. Lambert v. Astrue,* No. 3:10-cv-435, 2012 WL 37389, at *8 (S.D. Ohio Jan. 9, 2012) (Report and Recommendation), *adopted,* 2012 WL 966060 (S.D. Ohio March 21, 2012). Thus, the ALJ's opinion sufficiently details that he has given more weight to the opinions of the state agency reviewing physicians by giving them "some weight," than to the opinions of plaintiff's treating and examining physicians, on which he placed "little weight" or "no weight."

*Id.* The same reasoning applies here. The ALJ did not err by using the terms "some weight"

and "little weight" in evaluating the medical opinions of record.

Further, for each medical opinion that the ALJ did address in this case, the ALJ went beyond simply asserting that each opinion was entitled to "some" or "little" weight. The ALJ provided reasons for the weight he gave each opinion and sufficiently explained those reasons. (Tr. 726-728). Plaintiff has shown no error in this regard.

Plaintiff's second assignment of error should be overruled.

## III.    Conclusion

If the ALJ failed to apply the correct legal standards or his factual conclusions are not supported by substantial evidence, the Court must decide whether to remand the case for rehearing or to reverse and order an award of benefits. Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan,* 501 U.S. 89, 98 (1991). Remand is appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding. *Faucher v. Secretary of H.H.S.,* 17 F.3d 171, 176 (6th Cir. 1994). Remand for payment of benefits is warranted only "where proof of the disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking." *Id.*

This matter should be reversed and remanded pursuant to sentence four of § 405(g) for further proceedings consistent with this Report and Recommendation. All essential factual issues have not been resolved in this matter, nor does the current record adequately establish plaintiff's entitlement to benefits. *See Faucher,* 17 F.3d at 176. This matter should be

remanded for evaluation of Dr. Fiehrer's opinions of plaintiff's mental functioning, reweighing of the evidence, and the eliciting of additional vocational evidence as warranted.

**IT IS THEREFORE RECOMMENDED THAT**:

The decision of the Commissioner be **REVERSED** and this matter be **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

Date: <u>January 30, 2019</u>                          <u>s/ Karen L. Litkovitz</u>
                                                    Karen L. Litkovitz
                                                    United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

CHRISTIAN R. SHOWALTER,
Plaintiff,

Case No. 1:18-cv-103
Dlott, J.
Litkovitz, M.J.

vs.

COMMISSIONER OF
SOCIAL SECURITY,
Defendant.

## NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).